**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **MYLES MCMILLIN, INDIVIDUALLY AND ON BEHALF OF HIS MINOR CHILD, O.M.** | **CIVIL CASE NO. 25-150** |
| **VERSUS** | **JUDGE EDWARDS** |
| **TONEY EDWARDS, ET AL.** | **MAG. JUDGE PEREZ-MONTES** |

**MEMORANDUM RULING AND ORDER**

Before the Court are Cross-Motions for Summary Judgment. Tony Edwards ("Sheriff Edwards") and Ben Adams ("Deputy Adams") (collectively, "Defendants") filed the first Motion for Summary Judgment (R. Doc. 22). Myles McMillin, individually and on behalf of his minor child, O.M. ("Plaintiff"), opposes the motion (R. Doc. 32). Defendants replied (R. Doc. 33). Plaintiff filed the second Motion for Summary Judgment (R. Doc. 24). Defendants oppose the motion (R. Doc. 34). The time for filing a reply has run, *see* R. Doc. 29, and accordingly, the motions are ripe.

After careful consideration of the parties' memoranda and the applicable law, Defendants' Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**, and Plaintiff's Motion for Summary Judgment is **DENIED**.

## I. BACKGROUND

This case arises out of Plaintiff's arrest after making Facebook posts about Sheriff Edwards. From approximately 2016-2024, Plaintiff posted commentary on Facebook criticizing Sheriff Edwards. *See* R. Doc. 24 at 9. In his posts, Plaintiff would

often refer to Sheriff Edwards using nicknames such as "SnapChatHero," "Toney the Tiger," "Boss Hog," and "old Snapper." *See id*. According to Plaintiff, this commentary concerned Sheriff Edwards's alleged solicitation of, and sexual misconduct toward, women in the community, including Plaintiff's late wife, with whom Sheriff Edwards had a prior relationship before her marriage to Plaintiff. *See id*. at 9–10. Defendants claim that the posts made references to Sheriff Edwards being a pedophile and transmitting sexually explicit photos to a 16-year-old minor. *See* R. Doc. 22-1 at7. At some point prior to Plaintiff's arrest, Sheriff Edwards even went to Plaintiff's home threatened to "put stalking charges on" Plaintiff if he "didn't stay off the internet." *See* R. Doc. 28-7 at 13.

Then, on March 4, 2024, Sheriff Edwards made a criminal complaint on behalf of himself and his family against Plaintiff, accusing him of cyberstalking. *See* R. Doc. 22-1 at 6. After the complaint was made, Sheriff Edwards instructed Deputy Adams to investigate the claims. *See* R. Doc. 22-1 at 8. On the same day that the complaint was made, an arrest warrant for Plaintiff, a search warrant for his residence and "any and all electronic devices," and a search warrant for Plaintiff's Facebook account were signed by District Judge John Reeves ("Judge Reeves") based on affidavits executed by Deputy Adams. *See* R. Doc. 22-1 at 6–7. The arrest warrant charged Plaintiff with 100 counts of cyberstalking under La. Rev. Stat. § 14:40.3. *See* R. Doc. 22-3 at 3. Judge Reeves then recused himself from the case two days later because of his personal connection to Plaintiff. *See* R. Doc. 24 at 10. On August 28, 2024, another search

warrant was signed by a different judge for Starlink account(s) information for Plaintiff. *See* R. Doc. 22-6.

Plaintiff was arrested for cyberstalking at his home by "eight to ten deputies" on March 4, 2024, the same day the complaint was filed by Sheriff Edwards. *See* R. Doc. 24 at 8. Although Plaintiff was charged with and arrested for 100 counts of cyberstalking, Deputy Adams admitted that he overcharged Plaintiff by charging him with 100 counts when he "found only 51 counts." *See* R. Doc. 22-9 at 12–13. That number was later reduced to 23 counts, *see id.* at 13, before the State declined to institute prosecution. *See* R. Doc. 24 at 11.

On February 7, 2025, Plaintiff filed the instant suit against Defendants in their individual and official capacities. *See generally* R. Doc. 1. Pursuant to 42 U.S.C. § 1983, Plaintiff asserts violations of the First and Fourth Amendments of the United States Constitution. *See generally id.* He alleges that Defendants retaliated against him for exercising his First Amendment rights, and as a result, he was falsely arrested. *See generally id.* He also alleges a claim of retaliation against Defendants under the Louisiana Constitution. *See generally id.* He alleges several other claims against Defendants under Louisiana law for false arrest, conversion, false imprisonment, malicious prosecution, and intentional infliction of emotional distress. *See generally id.* Finally, Plaintiff brings a municipal liability claim against Sheriff Edwards in his official capacity as Sheriff of Catahoula Parish for his "fail[ure] to properly train himself and the deputies under his authority." *See generally id.*

## II. APPLICABLE LAW

### a. Summary Judgment Standard

Summary judgment is appropriate when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Hyatt v. Thomas,* 843 F.3d 172, 177 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute is genuine if the summary judgment evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Id.* (internal quotations omitted). In evaluating a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E&P USA Inc. v. Kerr-McGee Oil & Gas Corp.,* 719 F.3d 424, 434 (5th Cir. 2013) (internal citations omitted).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (cleaned up). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263

(5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

**b. Qualified Immunity**

42 U.S.C. § 1983 provides a federal cause of action for the "deprivation of any rights, privileges or immunities secured by the Constitution and laws" against any person acting under color of state law. Section 1983 does not itself create substantive rights; rather, it merely provides remedies for rights guaranteed to citizens by the United States Constitution or other federal laws. *See Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Accordingly, "officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time." *D.C. v. Wesby*, 583 U.S. 48, 62–63 (2018) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The two steps of the qualified immunity inquiry may be performed in any order. *Pearson*, 555 U.S. at 236.

The qualified immunity doctrine turns the traditional summary judgment burden on its head, requiring a plaintiff—the non-moving party—to "demonstrate the inapplicability of the defense." *Rogers v. Jarrett*, 63 F.4th 971, 975 (5th Cir. 2023). To meet this burden, the plaintiff must "(1) raise a fact dispute on whether his

constitutional rights were violated by the defendants' individual conduct, and (2) show those rights were 'clearly established at the time of the violation.'" *Id*. "This is a demanding standard." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015), *cert. denied*, 578 U.S. 907 (2016). "Because qualified immunity protects all but the plainly incompetent or those who knowingly violate the law, we do not deny its protection unless existing precedent places the constitutional question beyond debate." *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023), *cert. denied*, 145 S.Ct. 435 (2024) (internal quotation marks and citations omitted). However, even when conducting a qualified immunity analysis, the Court views all evidence and makes all reasonable inferences in the light most favorable to the plaintiff. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

## III. ANALYSIS

### a. Official Capacity Claims Against Deputy Adams

Defendants first argue that Plaintiff cannot maintain his official capacity claim against Deputy Adams because it is redundant. *See* R. Doc. 22-1 at 10–11. We agree. Official capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent[,]" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted), and may only be brought against an official acting as a final policymaker in accordance with state law. *See Guillot on behalf of T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (citations omitted). And Plaintiff concedes this point. *See* R. Doc. 32 at 6. Accordingly, "[b]ecause [Sheriff Edwards] is named as a party in this suit, the claim[ ] against [Deputy Adams] in [his] official [capacity is] redundant

and will be dismissed." *See Louisiana Div. Sons of Confederate Veterans v. City of Natchitoches*, 370 F. Supp. 3d 692, 699 (W.D. La. 2019), *aff'd*, 821 Fed. Appx. 317 (5th Cir. 2020).

**b. False Arrest**

Defendants argue that Plaintiff's claim for false arrest fails because there was probable cause to charge and arrest him. *See* R. Doc. 22-1 at 11–12. They also assert that they are entitled to qualified immunity for the claim. *See id*. at 13–14. Plaintiff maintains that there was no probable cause the cyberstalking statute "does not reach [Plaintiff's] speech." *See* R. Doc. 32 at 8. Plaintiff further argues that Defendants are not entitled to qualified immunity because the law was clearly established at the time of the arrest that Plaintiff had "the right to be free from retaliatory arrest and prosecution for criticizing public officials." *See id*. at 11.

Plaintiff's arrest was unlawful unless it was supported by probable cause. *Arnold v. Williams*, 979 F.3d 262, 269 (5th Cir. 2020) (citation omitted). "To determine whether probable cause existed for an arrest, the court 'examine[s] the events leading up to the arrest, and then decide[s] "whether these historical facts, viewed from the standpoint of a reasonable police officer, amount to" probable cause.'" *Loftin v. City of Prentiss*, 33 F.4th 774, 780 (5th Cir. 2022) (alterations in original) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). That said, "[a]n officer is due qualified immunity, 'even if he did not have probable cause to arrest a suspect,' so long as 'a reasonable person in his position would have believed that his conduct conformed to the constitutional standard in light of the information available to him

and the clearly established law.'" *Perry v. Mendoza*, 83 F.4th 313, 317 (5th Cir. 2023) (first quoting *Voss v. Goode*, 954 F.3d 234, 239 (5th Cir. 2020); and then citing *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)).

Plaintiff was charged with, and arrested for allegedly violating the Louisiana cyberstalking statute, La. Rev. Stat. § 14:40.3. As set forth in the statute:

> B. Cyberstalking is action of any person to accomplish any of the following:
>
> * * *
>
> (2) Electronically mail or electronically communicate to another repeatedly, whether or not conversation ensues, for the purpose of threatening, terrifying, or harassing any person.
> (3) Electronically mail or electronically communicate to another and to knowingly make any false statement concerning death, injury, illness, disfigurement, indecent conduct, or criminal conduct of the person electronically mailed or of any member of the person's family or household with the intent to threaten, terrify, or harass.

La. Rev. Stat. § 14:40.3(B)(2)–(3). The cyberstalking statute defines "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature, transmitted in whole or in part by wire, radio, computer, electromagnetic, photoelectric, or photo-optical system." La. Rev. Stat. § 14:40.3(A)(1). The offense is deemed to have been committed where the electronic communication was "originally sent, originally received, or originally viewed by any person." La. Rev. Stat. § 14:40.3(D). Thus, the statute does not require that the electronic communication be transferred or transmitted directly to the victim, nor does it require a physical threat. *Raymond v. Lasserre*, 368 So.3d 82, 91–92 (La. App. 1st Cir. 3/6/23), *writ denied*, 372 So.3d 335 (La. 2023). Lastly, the statute "does not

apply to any peaceable, nonviolent, or nonthreatening activity intended to express political views or to provide lawful information to others." La. Rev. Stat. § 14:40.3(E).

Here, we are not able to determine whether probable cause existed at the time of the warrant application or the arrest because neither party has attached the disputed posts as evidence. Although Plaintiff argues that his posts fall under subsection (E)'s exemption to the statute, *see* R. Doc. 32 at 8–9, we cannot make that determination on the record presently before us. Moreover, Defendants argument that the arrest was made pursuant to an arrest warrant does not automatically protect them from liability because the issuance of a warrant does not guarantee qualified immunity where "on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Jordan v. Brumfield*, 687 F. App'x 408, 413 (5th Cir. 2017). The evidence in the record indicates that Deputy Adams admitted that he did not consider the First Amendment in his determination of probable cause, *see* R. Doc. 28-5 at 2, his investigation was not thorough and was rushed, *see id*. at 16–17, and he made mistakes related to the case, *see id*. at 17. Further, Deputy Adams admitted that he overcharged Plaintiff by charging him with 100 counts of cyberstalking, when he "found only 51 counts." *See* R. Doc. 22-9 at 12–13. That number was later reduced to 23 counts, *see id*. at 13, before the State declined to institute prosecution. *See* R. Doc. 24 at 11. The record also shows that Sheriff Edwards had previously threatened to "put stalking charges on" Plaintiff if he "didn't stay off the internet." *See* R. Doc. 28-7 at 13. Based on this, we find that a fact dispute prevents the Court from conclusively determining that a

reasonable officer in Defendants' positions could have believed that probable cause existed to arrest Plaintiff, even in light of the warrants issued. Accordingly, the fact that Defendants arrested Plaintiff pursuant to a warrant does not protect them from liability.

Turning to whether Defendants are nonetheless entitled to qualified immunity on Plaintiff's false arrest claim, Plaintiff cites to *Bailey v. Iles*, 87 F.4th 275 (5th Cir. 2023), for the proposition that Defendants violated clearly established law by arresting Plaintiff for engaging in constitutionally protected speech. *See* R. Doc. 24 at 21–22. Defendants argue that *Bailey* is factually distinguishable because it "involved a warrantless arrest without the benefit of independent judicial review." *See* R. Doc. 33 at 1.

*Bailey* involved a warrantless, in-home arrest for a COVID-19-related Facebook post that law enforcement viewed to be "terrorizing." *See Bailey*, 87 F.4th at 289–90. The Fifth Circuit determined that the arresting officer was not entitled to qualified immunity because the content of the post was protected speech, the arresting officer lacked probable cause to arrest the plaintiff, and the officer "was 'objectively unreasonable' in believing otherwise" based on the text of the statute and state case law interpreting it. *See id*. at 282–88.

Although *Bailey* does not match the factual circumstances underlying Plaintiff's claim exactly, "[a] right may be clearly established without 'a case directly on point.'" *Hanks v. Rogers*, 853 F.3d 738, 746–47 (5th Cir. 2017) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). All that is necessary is that "existing precedent must

have placed the statutory or constitutional question beyond debate." *Id.* (quoting *White*, 580 U.S. at 79). In the Fifth Circuit, it is clearly established that "government retaliation against a private citizen for exercise of First Amendment rights cannot be objectively reasonable." *Keenan v. Tejeda*, 290 F.3d 252, 261 (5th Cir. 2002) (citing *Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996)).

Similar to *Bailey*, this case involved an in-home arrest for Facebook posts that law enforcement viewed to be "harassing." Further, as discussed above, there is at least a factual dispute as to whether there was probable cause to make the arrest and whether Defendants' actions were "objectively unreasonable" in light of the text of the cyberstalking statute. *See id.* at 262 ("The test for qualified immunity, therefore, involves, though it does not end with, the question of probable cause."). Accordingly, we find that there is a genuine dispute of material fact as to whether Plaintiff's posts constitute protected speech and do not fall under the cyberstalking statute. Under those circumstances, it would have been clearly established for any reasonable officer in Defendants' positions that filing a complaint, directing a deputy to investigate the critic, conducting a less-than-thorough investigation into the complaint, admittedly overcharging the critic, and arresting the critic at his home with eight to ten deputies was unlawful at the time of the violation. *See id.* ("If no reasonable police officer could have believed that probable cause existed for the law enforcement actions of [the officers] against the plaintiffs, then their retaliation violated clearly established law in this circuit.") (citations omitted). Accordingly, both motions are denied as to this claim.

### c. First Amendment Retaliation

Both parties move for summary judgment on Plaintiff's First Amendment retaliation claim.[1] "The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). Similarly, Article I, § 7 of the Louisiana Constitution provides: "No law should curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom."

To prevail on a First Amendment retaliation claim, plaintiffs must show "(1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Bailey v. Iles*, 87 F.4th 275, 289 (5th Cir. 2023) (quoting *Keenan*, 290 F.3d at 258). "The requisite injury need not be physical; rather, the injury 'is the deprivation of a constitutional right.'" *Green v. Strickland*, No. 20-601, 2026 WL 936348, at *18 (W.D. La. Mar. 30, 2026) (quoting *Keenan*, 290 F.3d at 259). Moreover, the extent of the deprivation "need not be great" because "there is no justification for

---

[1] Plaintiff argues that Defendants cannot carry their burden on summary judgment because they moved for summary judgment under the wrong rule. *See* R. Doc. 32 at 6–7. Plaintiff claims that he alleging a First Amendment retaliatory *arrest* claim, while Defendants move for summary judgment on a First Amendment retaliatory *prosecution* claim. *See id.* Defendants did not address this claim in their reply. Regardless, we need not resolve this dispute because Defendants' motion is denied for the reasons below.

harassing people for exercising their constitutional rights." *Keenan*, 290 F.3d at 259 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). With limited exceptions, when a First Amendment retaliation claim is predicated on an arrest, the plaintiff must adequately allege a lack of probable cause for the arrest. *Nieves v. Bartlett*, 587 U.S. 391, 398–99 (2019); *Mayfield v. Butler Snow, L.L.P.*, 75 F.4th 494, 500 (5th Cir. 2023) (quoting *Mayfield v. Currie*, 976 F.3d 482, 486 n.1 (5th Cir. 2020)).

Here, Defendants are not entitled to summary judgment because they hardly briefed Plaintiff's First Amendment retaliation claims and provided no analysis of the three factors listed above. Similarly, Plaintiff is not entitled to summary judgment on this claim because as discussed in the context of his false arrest claim, he has not established the first factor—that his speech was indeed constitutionally protected.

The Fifth Circuit has held that "government retaliation against a private citizen for exercise of First Amendment rights cannot be objectively reasonable." *Keenan*, 290 F.3d at 261 (citing *Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996)). But a law enforcement officer is nonetheless protected by qualified immunity against a First Amendment retaliatory arrest claim if probable cause existed or a reasonable police officer could have believed that probable cause existed. *Rucker v. Marshall*, 119 F.4th 395, 402 (5th Cir. 2024) (citing *Roy v. City of Monroe*, 950 F.3d 245, 255 (5th Cir. 2020)).

However, as discussed in connection with Plaintiff's false arrest claim, a fact dispute prevents the Court from conclusively determining that a reasonable officer in

Defendants' positions could have believed that probable cause existed to file a complaint, investigate, and arrest Plaintiff. *Keenan*, 290 F.3d at 262 ("The test for qualified immunity, therefore, involves, though it does not end with, the question of probable cause. If no reasonable police officer could have believed that probable cause existed for the law enforcement actions of [the officers] against the plaintiffs, then their retaliation violated clearly established law in this circuit."). (citing *Rolf*, 77 F.3d at 828). These same fact disputes preclude entry of summary judgment for either party on Plaintiff's First Amendment retaliation claim, as well as his claims brought under the Louisiana Constitution on qualified immunity grounds. *See Brooks v. City of W. Point*, 639 F. App'x 986, 989 (5th Cir. 2016) (overturning summary judgment when the determination of qualified immunity as to First Amendment retaliation claim turned on disputed issues of fact as to whether there was probable cause for arrest); *see also Cangelosi v. Jefferson Par. Council*, 362 So.3d 868, 874 (La. App. 5th Cir. 12/14/22), *writ denied*, 357 So.3d 827 (La. 3/14/23); *Davis v. Allen Par. Serv. Dist.,* 210 Fed. Appx. 404, 413 (5th Cir. 2006) (finding summary judgment proper for claim brought under the Louisiana Constitution where the court granted summary judgment on § 1983 First Amendment claim).

**d. *Monell* Liability**

The parties also cross-move for summary judgment on Plaintiff's *Monell* claim. A municipality may be subject to liability pursuant to § 1983 when the municipality maintains an unconstitutional policy or custom. *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691

(1978)). These claims are sometimes referred to as "*Monell* claims," in reference to the Supreme Court case by that name. *See Monell*, 436 U.S. 658. In order to state a claim against a municipal defendant for an alleged unconstitutional policy or practice, the plaintiff must allege that "(1) an official policy (2) promulgated by a policymaker (3) was the moving force behind the violation of a constitutional right." *Hicks–Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017) (citations omitted). An "official policy or custom" giving rise to liability pursuant to *Monell* may be "a persistent, widespread practice which, although not officially promulgated, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Esteves v. Brock*, 106 F.3d 674, 677 (5th Cir. 1997) (quotation omitted).

Defendants move for summary judgment on Plaintiff's *Monell* claim for failure to train. *See* R. Doc. 22-1 15–17. They argue that Plaintiff's Complaint "simply makes broad, general statements that Sheriff Edwards failed to train himself and the deputies under his authority." *See id.* at 17. In response, Plaintiff contends that "official-capacity liability here does not depend on a training theory at all." *See* R. Doc. 32 at 13. Plaintiff contradicts himself with this argument because his *Monell* claim—as stated in his Complaint—entirely relies on a training theory. *See* R. Doc. 1 at 21–22. Specifically, Plaintiff's Complaint reads: "COUNT VIII MONELL CLAIM–FAILURE TO TRAIN." *See id.* at 21. This is followed by allegations that do not mention any pattern of constitutional violations. *See id.* at 22. Nor do the allegations specify how Sheriff Edwards failed to train himself and his deputies. *See id.* Thus,

Defendants' motion is granted as to Plaintiff's *Monell* claims, and Plaintiff's motion is denied.

**e. State Law False Arrest, False Imprisonment, Conversion, Malicious Prosecution, and Intentional Infliction of Emotional Distress**

Both motions seek summary judgment on Plaintiff's state law claims of false arrest, false imprisonment, and malicious prosecution.[2] *See* R. Doc. 22-1 at 13; *see also* R. Doc. 24 at 17–19. Because we have found that there is a genuine dispute of fact as to whether probable cause to arrest existed, both motions are denied as to these claims. *See Morris v. Dillard Dept. Stores, Inc.*, 277 F.3d 743, 756 (5th Cir. 2001) ("Morris's claims for false arrest, false imprisonment, and malicious prosecution fail as a matter of law because Brown had probable cause to arrest Morris."); *see also Tabora v. City of Kenner,* 650 So.2d 319, 322–23 (La. App. 5th Cir. 1/18/95) (holding that an essential element of claims under Louisiana law of false arrest, false imprisonment, and malicious prosecution is a lack of probable cause).

Plaintiff also brought state-law claims for conversion and intentional infliction of emotional distress. A conversion is committed when any of the following occurs: 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel

[2] Defendants also claim that they are entitled to immunity for their discretionary acts under the statutory immunity afforded by La. Rev. Stat. § 9:2798.1. *See* R. Doc. 22-1 at 15. Defendants, however, do not indicate which claims they seek this immunity for. *See generally id*. To the extent that Defendants seek to claim discretionary immunity for Plaintiff's claims of false arrest and false imprisonment, Defendants' argument fails because those claims are analyzed under a qualified immunity standard. *See Adams v. City of Shreveport*, 269 F. Supp. 3d 743, 768–69 (W.D. La. 2017).

is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership is asserted over the chattel. *Dual Drilling Co. v. Mills Equip. Investments, Inc.*, 721 So.2d 853, 857 (La. 12/1/98) (citation omitted). A claim for IIED requires (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991).

Here, both motions as to Plaintiff's claim for conversion fail because a fact issue remains as to whether Defendants' actions "constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct" under La. Rev. Stat. § 9:2798.1. Further, Plaintiff's motion as to his claim for IIED fails because he relies entirely on his complaint to describe his injuries, but this is not enough to establish an entitlement to summary judgment. *See Washington v. Fam. Dollar Stores of Texas, LLC*, 803 F. Supp. 3d 548, 553 (S.D. Tex. 2025) ("[I]f the movant will carry the burden of proof at trial, as is the case when the movant is either the plaintiff or a defendant asserting an affirmative defense, then the movant can only carry its initial burden by establishing beyond peradventure all of the essential elements of its claim or defense.") (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). On the other hand, Defendants assert that they are entitled to summary judgment on Plaintiff's IIED claim because "the existence of probable cause

for an arrest undermines an IIED claim." *See* R. Doc. 22-1 at 13. These arguments fail because as with many of Plaintiff's other claims, we have determined that there is a genuine dispute of fact as to whether probable cause for Plaintiff's arrest existed. Accordingly, both motions are denied as to these claims.

## IV. CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (R. Doc. 22) is **GRANTED IN PART** as to the official capacity claims against Deputy Adams and Plaintiff's *Monell* claim against Sheriff Edwards and **DENIED** in all other respects.

**IT IS FURTHER ORDERED** Plaintiff's Motion for Summary Judgment (R. Doc. 24) is **DENIED**.

**THUS DONE AND SIGNED** this 15th day of September, 2026.

Jerry Edwards, Jr.

**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**